928 F.2d 400
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Lewis E. ADKINS, Defendant-Appellant.
 No. 90-5354.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 10, 1991.
Decided March 18, 1991.
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Beckley. Elizabeth V. Hallanan, District Judge. (CR-90-7)
 Edward Henry Weis, Assistant Federal Public Defender, Charleston, W.Va., for appellant.
 John Kirk Brandfass, Assistant United States Attorney, Charleston, W.Va. (argued), for appellee; Michael W. Carey, United States Attorney, Hunter P. Smith, Jr., Assistant United States Attorney, Charleston, W.Va., on brief.
 S.D.W.Va.
 AFFIRMED.
 Before CHAPMAN, WILKINSON and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Appellant Lewis E. Adkins was convicted of conspiracy to distribute oxycodone and diazepam (21 U.S.C. Sec. 846) and of distribution of these drugs (21 U.S.C. Sec. 841(a)(1)). Adkins now alleges that his conviction must be reversed and his case remanded for a new trial because the district court improperly limited the cross-examination of a key government witness and failed to give an instruction limiting the use of certain evidence. We affirm the conviction.
 
 I.
 
 2
 Significant at trial was the testimony of Wyneda Sims. On September 25, 1989, Wyneda Sims signed a plea-cooperation agreement with the United States. At that time, Sims also agreed that she would go undercover and try to buy drugs from appellant Adkins, in an effort to obtain leniency at sentencing in her case. Sims testified that she successfully bought drugs from Adkins on September 25, 1989--the day she signed the plea-cooperation agreement--and again on October 3, 1989.
 
 
 3
 The plea-cooperation agreement signed by Sims on September 25, 1989 was admitted into evidence. Its terms were straightforward ones. First, the agreement provided that Sims would plead guilty to a one count information charging distribution of hydromorphone. Second, under the agreement, Sims agreed to be "completely forthright and truthful" in regard to all inquiries made of her and to give testimony if necessary. Further, Sims was granted use immunity for any information she might supply though she was not protected from a prosecution for perjury or the giving of a false statement to a federal agent. The government agreed not to use the information she provided in calculating her sentence under the applicable guidelines and to inform the sentencing court of "the nature and extent of [Sims'] forthrightness and truthfulness ... and acceptance of personal responsibility."
 
 
 4
 At trial, the defense sought to cross-examine Sims concerning another cooperation agreement which she made with authorities in Summers County, West Virginia on March 5, 1985. Under this agreement, Sims had agreed to work undercover making "controlled buys"--buying drugs under the control of law enforcement officials--in exchange for the dropping of the charge against her. The district court refused to allow cross-examination as to the 1985 agreement.
 
 
 5
 In addition, the defense called two witnesses. One of these witnesses, Joseph Adkins, the appellant's nephew, testified as to Lewis Adkins' prior drug selling. In its closing argument to the jury, the prosecution referred to Joseph Adkins' testimony and the defense made no objection.
 
 
 6
 In its rebuttal closing, the prosecution stated:
 
 
 7
 She's [Sims] been involved in the drug business for a long time. She doesn't have to frame anybody. If she wants to help herself, she can do what she's been doing for six or seven or eight years. She can buy drugs. It's not as if she set out to frame somebody who never sold drugs.
 
 
 8
 The defense objected to these statements.
 
 
 9
 After the jury had retired to deliberate, the defense requested the court to further instruct the jury that it could use the evidence about Adkins' prior drug sales only for the purpose of weighing Joseph Adkins' credibility. The district court denied the request.
 
 II.
 
 10
 First, Adkins argues that the district court erred in refusing to allow cross-examination of Sims concerning the 1985 cooperation agreement. We find no error. Under the Confrontation Clause, trial judges "retain wide latitude ... to impose reasonable limits on ... cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). Here, the 1985 cooperation agreement was so different from the 1989 plea-cooperation that it was marginally relevant at best. The 1985 agreement was 1) made with state officials and 2) involved the dropping of charges. The 1989 agreement was 1) made with the United States and 2) involved Sims' pleading guilty to a federal felony. If cross-examination as to the 1985 agreement had been allowed, the jury might have become confused and made an unfair inference, believing erroneously that the two agreements operated in similar ways. Moreover, the 1985 agreement was remote in time.
 
 
 11
 Furthermore, any possible error in failing to allow crossexamination on the 1985 agreement was harmless because the requirements of the Confrontation Clause were clearly satisfied in this case. See Van Arsdall, 475 U.S. at 684. At trial, the September 25, 1989 agreement was offered into evidence and defense counsel cross-examined Sims extensively regarding her pleacooperation agreement, her hopes that cooperating with the police would win her leniency at sentencing, and her past drug trafficking. The jury had ample information on which to judge Sims' credibility and bias.
 
 III.
 
 12
 Next, Adkins maintains that the district court erred in failing to recall the jury and give the instruction limiting the use of the evidence with regard to Adkins' prior drug sales.
 
 
 13
 This contention has several problems. First, the defense's request for the limiting instruction was untimely. The defense never requested the limiting instruction until after the jury had retired to begin deliberations though it had been well aware much earlier that the testimony on Adkins' prior drug sales was before the jury. In fact, the defense itself had elicited the testimony as to prior drug selling on direct examination. We note also that the defense cannot allege a violation of Fed.R.Crim.P. 30 when it never requested the instruction which was omitted from the charge.
 
 
 14
 We could hardly find plain error under Fed.R.Crim.P. 52(b) where the instruction offered by the defense--which would have allowed the jury to use the prior drug sales evidence only to evaluate Joseph Adkins' credibility--was itself erroneous. The evidence of Adkins' prior drug sales was relevant under Fed.R.Evid. 404(b) to show his motive, opportunity and intent to sell drugs.
 
 IV.
 
 15
 For the foregoing reasons, the judgment of the district court is
 
 
 16
 AFFIRMED.